IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| COREY JERMAINE HUGULEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 3:10-CV-803-TMH |
| | ) | [WO] |
| SID LOCKHART, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff brings this *pro se* 42 U.S.C. § 1983 action for damages against Sheriff Sid Lockhart, Major Clay Stewart, Nurse Jessica Morgan, and Trooper Jeremy Lett. Plaintiff alleges that on March 9, 2010, Defendant Lett subjected him to excessive force during an arrest. Plaintiff further complains that the remaining defendants failed to provide him with constitutionally adequate medical care for the injuries he sustained during the course of his arrest and seizure.[1] (*Doc. No. 1*.)

Defendants filed special reports, answers, and supporting evidentiary materials addressing Plaintiff' claims for relief. In these documents, Defendants Lockhart, Stewart, and Morgan assert that Plaintiff failed to exhaust an administrative remedy available to him while incarcerated at the Covington County Jail. Pursuant to the orders entered in this case and governing case law, the court deems it appropriate to treat Defendants' reports as motions

---

[1] Plaintiff filed this action while incarcerated at the Easterling Correctional Facility in Clio, Alabama. During the pendency of the complaint Plaintiff was released from custody.

for summary judgment (*See Doc. No. 33*). *See Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) (Although an exhaustion defense "is not ordinarily the proper subject for a summary judgment[,]" the defense is appropriate for summary judgment when the evidence demonstrates administrative remedies "are absolutely time barred or otherwise clearly infeasible."). Thus, this case is now pending on Defendants' motions for summary judgment. Upon consideration of these motions, the evidentiary materials filed in support thereof, and Plaintiff's responses, the court concludes that Defendants' motions for summary judgment are due to be granted.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying

---

[2] Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules. These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Defendants have met their evidentiary burden and demonstrated the absence of a genuine issue of material fact with respect to Plaintiff's failure to exhaust administrative remedies as it pertains to his claim of inadequate medical care, as well as with regard to his excessive force claim. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats and Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

To survive Defendants' properly supported motions for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" establishing proper exhaustion of

administrative remedies. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations...."); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case

4

necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for

summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard v. Banks*, 548 U.S. 521, 529-530, 126 S.Ct. 2572, 2576, 165 L.Ed.2d 697 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment. *Matsushita*, 475 U.S. at 587.

## II. DISCUSSION

*A. The Chambers County Defendants*

Plaintiff alleges that Defendants Lockhart, Stewart, and Morgan ["the Chambers County defendants"], in their individual capacities, denied him adequate medical care and treatment for injuries he sustained during his arrest by Officer Lett. In response to these allegations, the Chambers County defendants argue that the claims against them should be

dismissed because Plaintiff failed to exhaust the administrative remedy provided at the Chambers Couty Jail prior to filing this complaint, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

The Prison Litigation Reform Act compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81 (2006). Moreover, "the PLRA exhaustion requirement requires ***proper exhaustion***." *Id*. at 93 (emphasis added).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative

system can function effectively without imposing some orderly structure on the courts of its proceedings.... Construing § 1997e(a) to require proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id*. at 90-91. The Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement ... by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to her. *Id*. at 83-84; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA). Further, the PLRA's exhaustion requirement contains no futility exception where there is an available inmate grievance procedure. *See Booth,* 532 U.S. at 741 n. 6 ( "[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." ); *Cox v. Mayer,* 332 F.3d 422, 424-28 (6th Cir. 2003) (holding that the exhaustion requirement applies to a former prisoner who filed his complaint without exhausting his administrative remedies and who had since been released from custody); *see also Massey v. Helman,* 196 F.3d 727, 733 (7th Cir. 1999).

The record in this case establishes that the Chambers County Jail provides a grievance

procedure for inmate complaints. (*Doc. No. 31, Exhs. B, D*; *see also Doc. No. 32 at pg. 14*.) This administrative remedy is available to all Chambers County Jail inmates, including Plaintiff at the time of his incarceration there. (*Id.*)  The Chambers County defendants assert that Plaintiff failed to exhaust his administrative remedies with respect to his claims concerning his medical care at the jail. To support this assertion, these defendants have offered a declaration and other record evidence which makes it clear that Plaintiff failed to file any grievance with respect to his claims of inadequate medical care about which he complains in the instant complaint. Plaintiff does not dispute his failure to exhaust the administrative remedy available in the prison system prior to filing this case.  (*See Doc. Nos. 38, 39*.)

     The court has thoroughly reviewed the evidentiary materials filed by Defendants Stewart, Lockhart, and Morgan.  These materials demonstrate that Plaintiff failed to properly exhaust the grievance procedure provided to him during his incarceration in the Chambers County Jail. Plaintiff has provided nothing to refute or explain the Chambers County defendants' evidence showing he failed to pursue the grievance remedy available at the facility.  The undersigned, therefore, finds there is no dispute of material fact that Plaintiff failed to exhaust his administrative remedies with respect to his claim of inadequate medical care and treatment against Defendants Lockhart, Stewart, and Morgan.  *See Bock*, 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and

not the PLRA, that define the boundaries of proper exhaustion."). Plaintiff's medical treatment claims presented in this cause of action are, thus, subject to dismissal, as Plaintiff failed to exhaust administrative remedies available to him which is a *precondition* to proceeding in this court on his claims. *Woodford*, 548 U.S. at 87-94.

As noted, Plaintiff is no longer incarcerated at the Chambers County jail. Thus, the administrative remedy provided by the Chambers County defendants is no longer available to him. Under such circumstances, dismissal with prejudice is appropriate. *Bryant v. Rich*, 530 F.3d 1368, 1375 n.1 (11th Cir. 2008); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005); *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Berry v. Keirk*, 366 F.3d 85, 88 (2nd Cir. 2004) (footnotes omitted) (Inmate's "federal lawsuits ... properly dismissed with prejudice" where previously available administrative remedies had become unavailable and no special circumstances justified the failure to exhaust.).

*B. Defendant Lett*

The court gleans from the somewhat sparse facts alleged in Plaintiff's complaint that on March 9, 2010, he observed an unmarked SUV (sport utility vehicle) attempting to stop him. Plaintiff, thinking "it was a joke [because] [i]t had happended 2 wks earlier some guys

playing around," decided to "elude[] not speeding." Eventually, the SUV struck Plaintiff's vehicle.  Plaintiff alleges that at this time the officer "[j]umped out burst out the passenger window got me out handcuffed me and begun beating me unconscious." Plaintiff maintains that he suffered two black eyes, had a front tooth knocked out, experienced severe head pain, and sustained scratches as a result of Defendant Lett's actions.  (*Doc. No. 1 at pgs. 3, 6.*)

At the time of the actions about which Plaintiff complains, Defendant Lett was a corporal with the Alabama Department of Public Safety assigned to the Felony Apprehension Patrol [FAP] Unit. Although the primary responsibility of the FAP unit is apprehending and arresting criminals in transit, the unit is also involved with regular traffic enforcement. (*Doc. No. 26, Exh. 2.*)

Defendant Lett states that on March 9, 2010 at approximately 8:17 p.m., he activated his blue lights after observing Plaintiff operate his vehicle without wearing the safety restraints. Plaintiff did not pull his vehicle to the side of the road or otherwise come to a stop; rather, he continued driving and a chase ensued. Plaintiff's vehicle, at times, reached 75 MPH. The chase lasted for approximately fifteen minutes during which time Defendant Lett requested assistance from available police units. (*Doc. No. 26, Exh. 2.*)

Defendant Lett's initial attempt to force Plaintiff to stop his vehicle was unsuccessful after Plaintiff attempted to run into the trooper's car.  Defendant Lett managed to avoid a collision and resumed following Plaintiff's car. At a point when Plaintiff slowed his vehicle down to make a turn, Defendant Lett hit the rear bumper of his car, causing it to drift.

Plaintiff attempted to drive out of the slide. Defendant Lett, however, made contact with Plaintiff's car, at which time it came to a stop. Because it appeared to Defendant Lett that Plaintiff was attempting to escape his vehicle through the front-side passenger door, Lett ran from his vehicle around to the front of Plaintiff's car with his weapon drawn and pointed at Plaintiff.  Plaintiff initially refused Defendant Lett's commands to exit his car. Finding the car doors locked, Defendant Lett broke the glass and reached inside to unlock the car door. He commanded Plaintiff to exit the car and get on the ground. Plaintiff complied with the request to get out of the car but refused to lie on the ground as ordered. Defendant Lett then forced Plaintiff to the ground.  Plaintiff put up active resistance to being handcuffed and struggled with Lett until the officer finally managed to handcuff him and place him in custody. Defendant Lett acknowledges that Plaintiff had some scratches and scrapes on one side of his body and on his face, but maintains that such injuries were consistent with the manner in which the trooper had to subdue Plaintiff. (*Doc. No. 26, Exh. 2*.)

Defendant Lett has submitted the dash-cam video which recorded his pursuit of Plaintiff on the evening in question. The video supports Defendant Lett's affidavit describing the car chase, including Plaintiff's exit from his vehicle.[3] He has also submitted the affidavit

---

[3]The video reflects that it was raining on the night in question. Nonetheless, Defendant Lett's pursuit of Plaintiff is clearly visible from the dash-cam.  At the point at which Plaintiff's car had come to a stop and he had exited the vehicle, the video shows Defendant Lett taking Plaintiff to the ground in order to handcuff him as he affirmed in his affidavit. The position of the parties' vehicles in relation to the dash-cam, however, obscures any view of what happened once Plaintiff was taken to the ground.  Video clarity at this point is also diminished due to the rain falling on Defendant Lett's windshield; the fact that it was evening and, therefore, dark outside; and the flashing lights from police cars positioned in front of the parties' vehicles. (*See Doc. No. 26, Exh. 1*.)

of an eye-witness to his efforts to handcuff Plaintiff. This witness, Henry Cooper, remained on the scene until other law enforcement officials arrived; he states that Defendant Lett did not apply any more force than that which was necessary to secure Plaintiff in handcuffs. (*Doc. No. 26, Exhs. 1, 3*.) Photographs of Plaintiff taken at the scene of the stop, as well as at the jail following his arrest, are also part of the evidence submitted by Defendant Lett in support of his dispositive motion. The photographs made at these times depict some cuts and abrasions to Plaintiff's face, leg, and knee. Plaintiff's front teeth are clearly visible, his eyes are neither bruised nor swollen, and he is clearly awake and alert. (*Doc. No. 26, Exhs. 3-5; Doc. No. 41, Attachment 1*.)

   *i. Qualified Immunity*

Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536, U.S. 730, 739 (2002) and *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but rather immunity from suit. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (citation omitted) To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendant was acting within the course and scope

of his discretionary authority when the incident complained of occurred. Plaintiff must, therefore, allege facts that, when read in a light most favorable to him, show that Defendant Lett is not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

In order to satisfy his burden, Plaintiff must show two things: (1) that Defendant committed a constitutional violation and (2) that the constitutional right Defendant violated was "clearly established." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). Courts now have discretion to determine the order in which the two prongs of Plaintiff's burden of proof are analyzed. *Pearson*, 129 S.Ct. at 818-19 (Courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case hand."). The court, therefore, analyzes whether Defendant Lett violated Plaintiff's constitutional rights.

   *ii. Excessive Force*

Plaintiff complains that after Defendant Lett had secured him in handcuffs Lett proceeded to subject him to excessive force by beating him unconscious, punching him in the eyes, and knocking out his front tooth. (*Doc. No. 1*.) Defendant Lett denies that any of his actions amounted to an excessive use of force under the circumstances and asserts the defense of qualified immunity. (*See Doc. No. 26, Exh. 2*.)

   Plaintiff's allegation of excessive force during the course of an arrest is analyzed

under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor,* 490 U.S. 386 (1989); *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009); *Vinyard,* 311 F.3d at 1346-47; *Lee,* 284 F.3d at 1197. A right is clearly established -- and an officer cannot receive qualified immunity -- if the "objectively reasonable police officer" would have realized that the conduct violated the constitution. *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006).

In balancing the necessity for the use of force against an arrestee's constitutional rights, the determination of whether excessive force was used during an arrest "requires careful attention to the facts and circumstances of each particular case," while keeping in mind that "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396-97. With respect to determining whether the force applied was "reasonable" under the circumstances, the court examines: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; and (3) the extent of the injury inflicted upon the individual to whom the force was applied, *Vinyard,* 311 F.3d at 1347; *Lee*, 284 F.3d at 1198, which usually requires an analysis of several factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *Vinyard*, 311 F.3d at 1347; *Lee*, 284 F.3d at 1197. "[T]he right to make an arrest or

investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396; *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003); *Nolin v. Isbell*, 207 F.3d 1253, 1258 n. 4 (11th Cir. 2000). The reasonableness of the force used "is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. If the force applied was reasonable under the circumstances and not excessive, the police officer has not violated any clearly established constitutional right and is entitled to summary judgment based upon qualified immunity. *Moore v. Gwinnett County,* 967 F.2d 1495, 1498 (11th Cir. 1992). While reasonable measured uses of force may be applied to effect a suspect's arrest, "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008).

Defendant Lett argues that he used no more force than necessary to effectuate Plaintiff's arrest after he exited his vehicle. The video evidence before the court reflects that Defendant Lett activated his blue lights as a signal for Plaintiff to pull over for a seat belt violation and then turned his siren on when Plaintiff refused to stop. Defendant Lett continued to pursue Plaintiff, whose vehicle, at times, reached 75 MPH. Not only did Plaintiff fail to pull over and stop when initially signaled to do so, but he also drove at high rates of speed, sped through yards, and ran stop signs. Defendant Lett's pursuit of Plaintiff's vehicle continued for approximately fifteen minutes before the trooper was able to make contact with Plaintiff's car and bring it to a stop. Believing from Plaintiff's movements inside

the car that he would attempt to elude on foot by escaping out the door of the front passenger seat, Defendant Lett exited his vehicle and ran around to the front of Plaintiff's car. Finding the car locked, and Plaintiff refusing to exit the vehicle, Defendant Lett broke out the passenger side window. He opened the car door, at which point Plaintiff complied with the trooper's request that he exit the vehicle. Plaintiff, however, failed to follow Defendant Lett's orders that he get on the ground, and instead actively resisted the officer's efforts in this regard. Defendant Lett finally managed to force Plaintiff on to the ground where he was then able to secure him in handcuffs. (*Doc. No. 26, Exhs. 1, 2*.)

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380-381 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* In the instant case, Plaintiff claims that after he was handcuffed Defendant Lett beat him unconscious, blackened his eyes, and knocked out his front tooth. However, the video and photographic evidence clearly contradict Plaintiff's version of events as well as his description of his injuries. "Where an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible." *Morton v. Kirkwood*, 707 F.3d 1276, 1285 (11th Cir. 2013); *see also Scott*, 550 U.S. at 380-81 ("Respondent's version of events is so utterly discredited by the record that no reasonable

17

jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.").

Defendant Lett's photographic evidence shows only that Plaintiff received some scrapes and abrasions to his face, leg, and knee. That evidence is consistent with the amount of force necessary to handcuff and subdue an actively resisting suspect. *See Durruthy*, 351 F.3d at 1094 (citations omitted) ("This circuit has made clear that some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense."); *see also Rodriguez v. Farrell,* 280 F.3d 1341, 1351 (11th Cir. 2002) ("In the Eleventh Circuit, [courts] recognize that the typical arrest involves some force and injury."); *Nolin,* 207 F.3d at 1257–58 (concluding, as a matter of law, that force used during arrest, including handcuffing, was not excessive when force and resulting injury were minimal); *Brissett v. Paul,* 141 F.3d 1157 (4th Cir. 1998) (table) (concluding, as matter of law, that painful handcuffing with minimal injury not constitutional violation); *Foster v. Metropolitan Airports Comm'n,* 914 F.2d 1076, 1082 (8th Cir. 1990) (same); *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1559 (11th Cir. 1993) (finding that subduing the suspect with a "choke hold" and pushing the suspect against a wall was *de minimis* force); *Gold v. City of Miami*, 121 F.3d 1442, 1446–47 (11th Cir. 1997) (minor injury caused solely by tight handcuffs). A law enforcement official is not to be questioned in hindsight; rather, the proper evaluation is "whether a reasonable officer would believe that this level of force is necessary to the situation at hand." *Lee*, 284 F.3d at 1197.

Based on the totality of circumstances, the court finds that Defendant Lett' actions did not amount to excessive force and caused no more than what amounts to *de minimis* injury. *See Draper v. Reynolds*, 369 F.3d 1270, 1277-78 (11th Cir. 2004). Defendant Lett is, therefore, entitled to summary judgment on Plaintiff's excessive force claim.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants Lockhart's, Stewart's, and Morgan's motions for summary judgment (*Doc. Nos. 31, 32*) be GRANTED to the extent these Defendants seek dismissal of this case against them due to Plaintiff's failure to properly exhaust an administrative remedy previously available to him at the Chambers County Jail;

2. This case against Defendants Lockhart, Stewart, and Morgan be DISMISSED with prejudice in accordance with the provisions of 42 U.S.C. § 1997e(a) for Plaintiff's failure to exhaust an administrative remedy available to him during his confinement in the Chambers County Jail;

3. Defendant Lett's motion for summary judgment (*Doc. No. 26*) be GRANTED and this case against him be DISMISSED with prejudice;

4. Judgment be ENTERED in favor of Defendants and against Plaintiff; and

5. Costs be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that on or before **June 11, 2013** the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 28th day of May, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE